## DENSMORE et al. v. SEARLE.

(Supreme Court, Appellate Division, First Department. June 19, 1896.)

TRUSTS—PRINCIPAL AND AGENT.
     An agent dealing with the subject of his agency for his own benefit is chargeable as trustee for his principal.

Appeal from special term, New York county.

Action by Emmett Densmore and another against Charles Searle to recover 145 shares of the second preferred stock, and 145 shares of the common stock, of the Union Typewriter Company. There was a judgment in favor of plaintiffs, and defendant appeals. Affirmed.

In 1892 it was sought to effect a consolidation of all the typewriter companies, to be called the Union Typewriter Company. To accomplish this it was

necessary to secure all the stock of the different companies. The negotiations for the formation of the Union Typewriter Company led the stockholders of the Densmore Typewriter Company, on or about January 5th, 1893, to enter into an agreement with two of their number, C. Godfrey Patterson and Edward J. Delehanty, as trustees, wherein it was provided that they should exchange all of their stock for stock in the Union Typewriter Company. There had been issued up to that time 3,000 shares of stock by the Densmore Typewriter Company. This agreement provided that the Densmore Company stockholders should receive 1⅓ preferred and 1⅓ shares of common stock in the Union Typewriter Company for each 4 shares of Densmore Company stock. This agreement was the joint act of all the stockholders, and was signed by all of the stockholders, including the plaintiffs and defendant. At or about the time of the execution of this agreement, and pursuant thereto, an agreement bearing date December 29, 1892, was entered into between C. Godfrey Patterson and Edward J. Delehanty, trustees of the Densmore stockholders, of the one part, and Charles Fowler, of the other. This agreement provided for the securing by Messrs. Patterson and Delehanty of all the stock of the Densmore Company, and its exchange for stock in the Union Typewriter Company. The basis of the exchange was the same as in the contract between the Densmore stockholders and Messrs. Patterson and Delehanty. After the execution of these two agreements, Fowler requested the Densmore stockholders to accept second preferred stock in place of preferred stock as provided for in the two agreements already executed. He also requested that the time limited for the transfer of the stock be extended from March 1, 1893, to April 1, 1893. At a gathering in Edward J. Delehanty's office at which were present Messrs. Patterson and Delehanty, trustees for the Densmore stockholders, defendant, and one George Matthews, a stockholder in the Densmore Company, it was decided that if the Densmore stockholders acceded to Fowler's request, to accept second preferred, instead of preferred, stock, they ought to receive a larger amount of stock than the 2,000 shares provided for in the two executed agreements. The question then arose as to who should conduct the negotiations with Fowler, and the defendant was selected, for the reason that he was an old acquaintance or schoolmate of one of Fowler's counsel. A day or two later, defendant reported to Delehanty and Patterson that Fowler had said that he was not willing to change the written contract then existing between him and Messrs. Patterson and Delehanty, but that he would give an additional 1,000 shares (of the par value of $100,000) of second preferred and common stock to the Densmore stockholders, in the form of a bonus to the defendant. Defendant further stated that the reason assigned by Fowler for giving the additional stock to the Densmore stockholders in this form was that, if he changed the written contracts then existing with the Densmore stockholders, the other companies proposing to consolidate would hear of it, and they too would demand an increased amount of stock. This arrangement was assented to by Messrs. Patterson and Delehanty on behalf of the Densmore stockholders. A second agreement was then executed by the Densmore stockholders of the one part, and Messrs. Patterson and Delehanty, as their trustees, on the other, modifying the first agreement by extending the time within which to exchange the stock to April 1, 1893, and providing for the acceptance by the Densmore stockholders of second preferred, instead of preferred, stock. This agreement, which was executed on or about February 28, 1893, contains no mention of the fact that the Densmore stockholders were to receive an additional 1,000 shares of stock. It only states the fact that the Densmore stockholders were to receive second preferred, instead of preferred, stock. This agreement was the joint act of all the Densmore stockholders, and signed by all of them, including the plaintiffs and defendant. On the 1st of April, 1893, the stock of the Densmore stockholders was exchanged for stock of the Union Company, pursuant to the terms of the modified agreement of February 28, 1893. The 2,000 shares of Union stock provided for in the first agreement between the Densmore stockholders and defendant was distributed among them in proportion to the amount of stock which each held in the Densmore Company. The defendant also distributed the additional 1,000 shares of stock given to the Densmore stockholders in the form of a bonus to the defendant among the Densmore stockholders, except the plaintiffs, in proportion to the amount of stock which they each held in the Densmore Company. The plain-

tiffs were the owners of 877 shares of the capital stock of the Densmore Company. The defendant did not, however, give the plaintiffs a single share of the 290 shares to which they were entitled as their proportionate part of the additional 1,000 shares of stock.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, PATTERSON, and INGRAHAM, JJ.

James M. Gifford, for appellant.
Walter K. Barton, for respondents.

RUMSEY, J. If the defendant was employed as the agent of the other stockholders of the Densmore Typewriting Company to effect a sale of their stock to Fowler at the best price that could be obtained for it, there can be no doubt that the judgment is correct, and should be affirmed. The rule is thoroughly settled that an agent employed to sell or in any other business is not permitted to make profits for himself in the transaction, and for all such profits he must account to his principal, and, if he has taken title to property in violation of his trust, equity will treat him as a trustee for his principal. 2 Pom. Eq. Jur. §§ 959, 1075. This rule of law is not disputed. So, the whole case turns upon the question whether Searle was the agent of the stockholders of this company to make this sale. It is not denied by Searle that before the sale was made, and while negotiations were pending, there was an arrangement of some sort between Densmore and himself about the price that should be charged for the stock. Densmore says that the agreement was that they would stand together, and neither should sell at any different price than was agreed upon by all. Searle says that the agreement was that they should not sell at a less price than $75,000 in cash and $75,000 in stock. In this he is corroborated by Matthews, and to some extent by the letters which Matthews wrote to Densmore when the arrangement was made that the price should be $100,000 in common stock, and $100,000 in first preferred stock. But it is not very important what the particular agreement was between the parties. It is sufficient that there was an agreement by which they were to act together in the sale of the stock. It is claimed by the plaintiffs that after the first option had been given, and while the negotiations were pending for the second option upon a different kind of stock, Searle was deputed to negotiate in behalf of all the stockholders, including the plaintiffs, for an increase of price with Fowler. Delahanty's evidence is precise on that point, but it is contradicted by Searle. It is claimed that the evidence of Fowler corroborates Searle, but we do not think so. Fowler says that Searle told him that he was insisting upon that bargain for himself. That, undoubtedly, is the fact, but it does not alter the relations between the stockholders and Searle as related by Delahanty, and it does not tend to prove at all that Searle did not in fact make the contract, which Delahanty says he did, to negotiate in behalf of all the stockholders for $100,000 more of the stock.

The defendant lays considerable stress upon the letter of Dr. Densmore, written as he was about departing on the steamer for

Europe, in which he says that he had been advised of the promise of Mr. Fowler to pay to Searle some individual stock in addition to what he would otherwise have, and relieve himself from all obligations in that matter, or from any blame about it. If this letter had been written after a full statement to Dr. Densmore of the circumstances under which that stock had been received by Searle, it would undoubtedly be of great importance; but it is evident from all the testimony in the case that at that time Densmore did not know of Searle's employment in behalf of all the stockholders, or of the circumstances under which the promise had been made by Fowler to give him the stock, and for that reason the letter is not of much importance.

Upon a careful consideration of the evidence, we are of the opinion that the finding of the trial court was correct, that Searle was deputized to represent the stockholders in making the contract for the new option with Fowler, and that, while he was engaged in making that contract, he procured the 500 shares of common stock, and the 500 shares of second preferred stock, in addition to the price which was stated in the agreement. In that view of the facts, the rule stated above clearly applies, and the conclusion which was reached by the learned judge at special term was sound, and the judgment entered upon it was correct, and should be affirmed, with costs. All concur.