MARY ISABELLE NEILSON, Plaintiff, *v.* ELLA REALTY CO., INC., et al., Defendants.

(Supreme Court, Bronx Special Term, December, 1921.)

Mortgages — insurance — covenant by mortgagor to keep premises insured for benefit of mortgagee is personal and does not run with the land — purchaser of real property not assuming payment of outstanding mortgage not bound by covenant in mortgage to insure — statutory short form of mortgages held not to unsettle the accepted rule of covenants — Real Prop. Law, § 254(4).

A covenant by a mortgagor to keep the premises insured for the benefit of the mortgagee is entirely personal in its character, does not affect the land or run with it, and is collateral and incidental to the remaining covenants in the mortgage.

A real estate mortgage for $28,000 contained a clause to the effect that the mortgagor would keep the buildings on the premises insured against loss by fire for the benefit of the mortgagee and that the receipt of any such insurance money might be retained and applied by the mortgagee toward the payment of the mortgage debt or might be paid over either wholly or in part to the mortgagor, her executors, administrators, successors or assigns, to enable her to repair the buildings or erect new ones in their place, or for any other purpose or object satisfactory to the mortgagee, without affecting the lien of the

mortgage for the full amount secured thereby before such damage by fire or such payment over took place. After the assignment of the mortgage to plaintiff she conveyed the premises subject to mortgages aggregating $38,125, with accrued interest, and subject also to certain taxes and water rents. The grantee conveyed the premises " subject to existing encumbrances " to the defendant company, which was the owner of the premises until the sale thereof under a judgment entered in an action to foreclose the $28,000 mortgage; which sale resulted in the entry of a deficiency judgment of $6,000 in favor of the plaintiff, who was the purchaser at the sale, against the mortgagor who has since relieved herself of liability therefor through the intervention of bankruptcy proceedings. At all times during defendant's ownership of the premises it paid the premiums on three certain policies of fire insurance, each for three years, and permitting other insurance without notice until required, obtained for and delivered to it by W. who at all such times was its agent. Two of said policies, each for $10,000, loss if any payable to the mortgagee as interest may appear, and containing pro-rating clauses with other insurance on the premises, were delivered by defendant to the attorneys for plaintiff herein, at or about their date of issue. The third policy for $7,500 for three years contained no mortgage clause, the loss if any was not in terms made payable to the mortgagee, and the defendant company retained it. When all this insurance was effected and at all times down to and at the time when the buildings were destroyed by fire, the cash value thereof was $27,500. The total amount received by plaintiff upon the two policies delivered to her through her attorneys was $13,190.90, which payment and an assignment of a share in the bond and mortgage were made without the knowledge or consent of the defendant company or of W. In an action to impress a lien in favor of plaintiff upon the sum of $4,363.63 claimed to have been collected by W. on the $7,500 policy and turned over by him to the defendant company, *held,* that the defendant company not having assumed the payment of the mortgage and not having covenanted with either the mortgagee or plaintiff to keep the premises insured for their benefit, the rule that where a mortgagor has covenanted to take out insurance for the benefit of the mortgagee and then takes out insurance in his own name, the same will be impressed with an equitable lien in favor of the mortgagee in case of loss, did not apply.

Although the defendant company was not bound to insure, upon its failure so to do plaintiff might procure such insurance from year to year, adding premiums to the mortgage debt.

The stipulation as to the facts containing no admission on the part of either of the defendants, the executors of W. having been substituted as defendants in his place and stead, of any obligation by the defendant company to insure for the benefit of the mortgagee, the inference was not justified that the defendant company assumed the obligation to carry out the terms of the mortgage.

In effecting the insurance, paying the premiums and delivering the two policies to plaintiff's attorneys, the defendant company complied with the insurance clause of the mortgage, but such compliance did not, in the circumstances, create a personal obligation to insure.

*Sheehan* v. *Spring Valley, etc., Corp.,* 194 App. Div. 119, followed.

The statutory short form of mortgages (Real Prop. Law, § 254(3), as amended by chap. 682 of the Laws of 1917) now section 254(4) of the Real Property Law, the clear purport of which is to protect a mortgagee in every way possible, was not intended to overturn and unsettle a rule of covenants accepted in New York since 1882 and reaffirmed in *Reid* v. *McCrum,* 91 N. Y. 412, and upon the authority of that decision it was not the duty of the defendant company, under the mortgage, to take out insurance for the benefit of plaintiff, and the policy for $7,500 issued in favor of defendant did not inure to the benefit of plaintiff as the holder of the mortgage in question.

Judgment directed in favor of all the defendants, upon the merits.

ACTION to impress a lien in favor of the plaintiff as the holder of a mortgage upon certain proceeds of insurance on a building destroyed by fire.

Scott, Gerard & Bowers (Spotswood D. Bowers, George A. Lewis and Stewart W. Bowers, of counsel), for plaintiff.

Reuben Brown, for defendant Ella Realty Co., Inc.

Leonard J. Obermeier, for defendants Frances Helen Wolff and Joseph J. Baker, as executors of the last will and testament of Abraham Wolff, deceased.

Giegerich, J. The plaintiff by this action seeks to impress a lien upon the sum of $4,363.63 claimed to have been collected by one Abraham Wolff and turned over by him to the defendant Ella Realty Co., Inc., as hereafter stated, on a policy of insurance issued by the Fidelity-Phenix Fire Insurance Company of New York for $7,500 upon the premises hereafter mentioned, which were destroyed by fire. Plaintiff is the assignee of the mortgage on the premises. The case was submitted upon the written stipulation of the attorneys for the respective parties from which the following appear to be the material and undisputed facts. On August 29, 1906, one Edith I. Pariser was the owner in fee simple of the premises known as No. 1814 Second avenue, borough of Manhattan, New York city, and on that day she executed a bond for $28,000 in favor of the American Mortgage Company and also a mortgage upon the said premises to secure the said bond. The said mortgage contained the following clause, among others: "And the said party of the first part covenants with the party of the second part as follows: *Second.* That the party of the first part will keep the buildings on the said premises insured against loss by fire for the benefit of the party of the second part. And should the party of the second part, by reason of such insurance against loss by fire as aforesaid, receive any sum or sums of money, such amount may be retained and applied by said party of the second part toward the payment of the sum hereby secured, or the same may be paid over, either wholly or in part, to the said party of the first part her executors, administrators, successors or assigns, to enable said party

of the first part to repair said buildings or to erect new buildings in their place, or for any other purpose or object satisfactory to the said party of the second part, without affecting the lien of this mortgage for the full amount secured thereby before such damage by fire or such payment over took place." The said mortgage and the bond thereby secured were duly assigned to the plaintiff by the American Mortgage Company, by assignment dated June 26, 1911, and recorded August 2, 1911. The said Edith I. Pariser conveyed the premises to one George Kocher, subject to mortgages aggregating the sum of $38,125 and accrued interest and subject also to the taxes and water rents for the year 1909, by deed dated March 24, 1910, and recorded March 24, 1910. The said George Kocher conveyed the said premises, " subject to existing incumbrances," to the defendant Ella Realty Company, Inc., by deed dated December 27, 1915, and recorded December 29, 1915. The defendant company owned the said premises from the time of the delivery of such deed and until the sale thereof pursuant to a judgment of foreclosure and sale bearing date the 28th day of May, 1920, entered in an action for the foreclosure of the said mortgage of $28,000, in which action the plaintiff in this action was plaintiff and the said defendant company and others were defendants. The premises were sold to the plaintiff pursuant to the said judgment and conveyed by the referee to her on February 9, 1921. The said sale resulted in a deficiency, and more than $6,000 of the debt secured by the mortgage remains due to the plaintiff and wholly unpaid. A deficiency judgment therefor was duly docketed in favor of the plaintiff against the said Edith I. Pariser, who is the only person liable for such deficiency. She has gone through bankruptcy in the United States District Court for the Eastern District

of New York and has thus relieved herself of liability for said deficiency and the judgment docketed therefor. The said Abraham Wolff was at all times during its ownership of the said premises the agent of the defendant company and obtained for it and delivered, as hereinafter stated, each of the three policies of fire insurance hereafter mentioned, the premiums on which were paid by the defendant company. One of these policies was issued by the North British and Mercantile Insurance Company in the sum of $10,000, insuring the defendant company as owner for three years, from June 13, 1916, to June 13, 1919, against loss or damage by fire to the premises in question, with the New York standard mortgage clause attached, making the loss payable to the American Mortgage Company, as mortgagee, as interest may appear. A copy of the said policy is annexed to the said stipulation as to the facts. The said policy was delivered by the defendant company to the attorneys for the plaintiff at or about the time of its issuance, to wit, June 13, 1916. The second of such policies was issued by the Phœnix Assurance Company, Limited, of London, in the sum of $10,000, insuring the defendant company, as owner, for three years from June 13, 1916, to June 13, 1919, against loss or damage by fire to the said premises, with New York standard mortgage clause attached, making the loss payable to the said American Mortgage Company, as mortgagee, as interest may appear. A copy of the said policy is annexed to the said stipulation. The said policy was delivered by the defendant company to the attorneys for the plaintiff at or about the time of its issuance, to wit, June 13, 1916. The third policy was issued by the Fidelity-Phenix Fire Insurance Company of New York in the sum of $7,500, insuring the defendant company, as owner, for three years, from April 2,

1916, to April 2, 1919, against loss or damage by fire to the said premises, without any mortgage clause and without making the loss payable to the holder of the said mortgage. A copy of the said policy is annexed to the said stipulation. The said policy was retained by the defendant company. The actual cash value of the building at the time the said insurance was effected and at all times down to and at the time of the fire, hereafter mentioned, was $27,500. All of the foregoing policies contained the following provision: " Other insurance permitted without notice until required." Both of the policies so delivered to the plaintiff's attorneys contained pro-rating clauses with other insurance on the premises. The policy issued by the said North British and Mercantile Insurance Company also contained the customary eighty per cent insurance clause. The plaintiff never knew of the issuance of the aforesaid policy of the Fidelity-Phenix Fire Insurance Company of New York, nor did her agents or attorneys know of the existence of such policy until after the fire hereafter mentioned and the adjustment of the loss by Wolff, as hereinafter mentioned, and the tender on December 14, 1918, of the checks hereafter mentioned. The said policies so issued by the North British and Mercantile Insurance Company and by the Phœnix Fire Insurance Company, Limited, of London, were delivered by Wolff on behalf of the defendant company to the attorneys for the plaintiff as collateral and further security for the payment of the money secured to be paid by the said bond and mortgage, and the plaintiff, by her attorneys, held the said two policies last mentioned continuously from the delivery thereof, as aforesaid, until after the said fire. The defendant company, by its agent, Wolff, held the said policy issued by the said Fidelity-Phenix Fire Insur-

ance Company of New York and retained the same continuously until after the said fire. Neither the said American Mortgage Company nor the plaintiff at any time disapproved of either of the said two policies so issued by the North British and Mercantile Insurance Company or the Phœnix Assurance Company or the amounts thereof nor did either of them request additional or further insurance, nor did they know or have any reason to suppose that any further or other insurance had been taken out. Such third policy was taken out without the knowledge and without asking or obtaining the consent thereto of the plaintiff. On or about October 1, 1918, the mortgaged premises were destroyed by fire, which caused a loss of $16,000. At the time of the fire there was due on the plaintiff's mortgage the principal sum of $24,000 with interest. Wolff, acting for and on behalf of the defendant company and without asking or obtaining plaintiff's consent and without her knowledge, communicated with the said three fire insurance companies or their representatives or agents and agreed to and adjusted the amount of the damage to the said premises by such fire at the sum of $16,000. On December 14, 1918, Wolff presented to the attorneys who are the attorneys for the plaintiff in this action the draft of the said North British and Mercantile Insurance Company, drawn to the order of the said American Mortgage Company and the defendant company in the sum of $5,818.18, and the draft of the said Phœnix Assurance Company, Limited, drawn to the order of the defendant company and the said American Mortgage Company, in the sum of $5,818.18, which drafts were issued by virtue of the existence of the said two policies of $10,000 first above mentioned, and were by their terms in full payment of the respective shares of the companies issuing such policies of the loss and

damage caused by the fire, and the plaintiff, by her
attorneys, refused to accept the said drafts in full
payment of such loss or damage and demanded that
the whole amount of the insurance paid should be paid
to her, including the $4,363.63 for which the said
Fidelity-Phenix Insurance Company of New York had
drawn its check to the order of the defendant com-
pany. This check was delivered to Wolff and it was
indorsed by the payee, the defendant company, by
George Kocher, its president, and delivered to Wolff
to enable him to use the said sum for certain repairs
to the said premises made necessary by the fire and to
reimburse him for expenditures made by him for the
same purpose, and thereafter Wolff deposited the
same in his own personal bank account in the Farmers
Loan and Trust Company on December 13, 1918. The
amount so deposited was $4,363.63. The last men-
tioned check was received by the defendant company
and Wolff in payment and satisfaction of the loss aris-
ing out of the fire under the policy so issued by the
Fidelity-Phenix Fire Insurance Company of New
York. The payment of the sum last above mentioned
was made without the knowledge or consent of the
plaintiff. Between the date of the fire and the deposit
of the said check by Wolff, he had incurred expenses
for repairs to the said premises, which expenses were
incurred at the request and under the authority of the
defendant company to the extent of at least $766.43.
Upon the deposit of the said check in his bank account
he reimbursed himself, with the authority of the
defendant company but without asking or obtaining
the plaintiff's consent in the said sum of $766.43. On
March 17, 1919, after Wolff knew of the plaintiff's
claim that the whole amount of the loss should be
paid to her, he returned to the defendant company the
balance of $3,597.20 without asking or obtaining her

consent. In the year 1919 the plaintiff, through her attorneys and agents, commenced and undertook negotiations with the said North British and Mercantile Insurance Company and the said Phœnix Assurance Company to obtain the payment by the said companies under their said policies of a sum equal to the entire loss and damage to the premises by fire and amounting, as already stated, to the said sum of $16,000. As a result of such negotiations on the part of the plaintiff through her attorneys and agents the said North British and Mercantile Insurance Company agreed to and on April 26, 1919, did pay unto the plaintiff the sum of $7,372.72 under its said policy, and on that date the plaintiff assigned to the last mentioned company a share in the bond and mortgage to the extent of $1,554.54. In the instrument assigning the same the following clause is contained, viz.: "The interest of said insurance company hereunder is subject and subordinate to the payment in full to the owner and holder of the said mortgage of the balance of principal and interest due her, and the subrogation hereby given to said insurance company shall not impair the right of the owner and holder of said mortgage to recover the full balance due on her mortgage ahead of them." As the premises were subsequently sold for $6,000 less than was due to the plaintiff, the assignment of the said subordinate interest has no effect in the case at bar, and the parties in the said stipulation have waived any possible defect of parties growing out of the assignment of such interest. The said Phœnix Assurance Company, Limited, of London, paid to the plaintiff the sum of $5,818.18. That company refused to pay to the plaintiff any larger sum, and the said North British and Mercantile Insurance Company required the said assignment of the said share in the bond and mortgage, for the

reason that the defendant company had taken out and held said policy of the Fidelity-Phenix Fire Insurance Company and had received payment thereunder of the aforesaid sum of $4,363.63. The total amount that the plaintiff, through her attorneys and agents, received under the policies of the North British and Mercantile Insurance Company and the Phœnix Assurance Company was $13,190.90. The aforesaid negotiations by the plaintiff with the said insurance companies and the payments aforesaid made by them to the plaintiff and the aforesaid assignment of a share in the bond and mortgage were without the knowledge or consent of the defendant company or Wolff. Wolff departed this life on May 21, 1921. He left a last will and testament and codicil thereto wherein and whereby he appointed Joseph J. Baker and Frances Helen Wolff to be the executors thereof, which will and codicil have been duly admitted to probate by the surrogate of the county of New York, and letters testamentary have been duly issued to them and by an order of this court, bearing date the 22d day of July, 1921, this action has been revived as against the said executors, who have been substituted as defendants herein in the place and stead of the said Wolff, without prejudice to any proceedings heretofore had herein, and have duly appeared in this action. The plaintiff claims that Wolff obtained possession of the moneys in question with full knowledge of all the facts, and that he thus became a party to the alleged constructive fraud of diverting moneys claimed equitably to belong to the plaintiff, and that consequently his estate is liable to the plaintiff jointly with the defendant company. The plaintiff invokes the rule that where a mortgagor has covenanted with the mortgagee to take out insurance for the benefit of the latter, and then takes out insurance in his own name,

the same will be impressed with an equitable lien in case of loss in favor of the mortgagee. *Cromwell* v. *B'klyn Fire Ins. Co.*, 44 N. Y. 42; *Dunlop* v. *Avery*, 89 id. 593; *Carter* v. *Rockett*, 8 Paige, 437; *Wattengel* v. *Schultz*, 11 Misc. Rep. 165; *Hathaway* v. *Orient Ins. Co.*, 11 N. Y. Supp. 413; 58 Hun, 602; affd., 134 N. Y. 409; *Wheeler* v. *Factors & Traders Ins. Co.*, 101 U. S. 439. There is no doubt as to the correctness of such rule, but a covenant by a mortgagor to keep the premises insured for the benefit of the mortgagee is entirely personal in its character and does not affect the land or run with it, and is collateral and incidental to the remaining covenants in the mortgage. *Dunlop* v. *Avery, supra; Reid* v. *McCrum*, 91 N. Y. 412; *Wheeler* v. *Factors & Traders Ins. Co., supra; Farmers Loan & T. Co.* v. *Penn. Plate Glass Co.*, 186 U. S. 434; *Sheehan* v. *Spring Valley Wood Products Corp.*, 194 App. Div. 119. In the instant case the defendant company did not covenant either with the mortgagee or the plaintiff, hence the rule above stated is not, as plaintiff claims, applicable to and decisive of the case at bar. The plaintiff insists, however, that she is entitled to enforce an equitable lien upon the proceeds of the policy for $7,500 taken out in the name of the defendant company, 'because, she claims, it is admitted that the said defendant was under obligation to carry out the terms of the mortgage in regard to the taking out of insurance for the benefit of the mortgagee. Especial reliance is placed by the plaintiff upon certain portions of the answers of the defendant company and the defendant executors, respectively, wherein and whereby, it is claimed, they each admitted that it was the duty of the defendant company under the mortgage to take out insurance for the benefit of the plaintiff. I do not so read the

separate answers of the said defendants. Paragraph 2 of the complaint in substance alleges that in October, 1918, and for a number of years prior thereto, and ever since, the defendant company was the owner of the premises in question with the building thereon, and that it was obligated to the plaintiff under a mortgage upon the same in the sum of $28,000, originally made to the American Mortgage Company, and subsequently assigned to the plaintiff; that under the terms of the mortgage the defendant company was obligated to keep the buildings on the said premises insured against loss by fire for the benefit of the plaintiff, and that it was further provided in the said mortgage that in case the said defendant should receive any sum or sums of money by reason of any such insurance against loss by fire that the amount so received should be paid over to the plaintiff in part payment towards the sum secured by the mortgage. Each and every allegation so contained in the said 2d paragraph of the complaint is denied by the said separate answers, except that the defendants admit the ownership of the premises by the defendant company during the time so mentioned in the complaint and that the premises were subject to the lien of the said mortgage, which was assigned to the plaintiff. Paragraph 3 of the complaint in substance alleges that, in part compliance with the terms of the said mortgage with regard to insuring the property for the benefit of the plaintiff, the defendant company took out some insurance upon the premises and delivered the policies to the plaintiff, the policies containing the usual pro-rating clauses, with all other insurance upon the property in case of loss. All these allegations are denied in each of the answers of the said defendants, except that they admit that in compliance with the terms of the mortgage the defendant com-

15

pany took out insurance upon the premises and delivered the policies to the plaintiff's assignor, American Mortgage Company, which company thereafter transferred and delivered such policies to the plaintiff, and that the policies contained the usual pro-rating clauses with all other insurance covering the property. The foregoing admissions as well as the following one contained in paragraph 21 of each of said answers, viz.: " This defendant has duly complied with all the terms and provisions of the said mortgage in so far as the same relates to insuring the mortgaged premises against loss or damage by fire for the benefit of the plaintiff," fall far short of the construction which the plaintiff claims should be placed upon them. As above shown, there is an express denial of the allegations of the complaint that it was the duty of the defendant company to keep the buildings upon said premises insured against loss by fire for the benefit of the plaintiff, and such denial is no way qualified or impaired by the said admissions which follow it. The stipulation as to the facts contains no admission on the part of either of the defendants of any obligation by the defendant company to insure for the benefit of the plaintiff. On the contrary, it merely states, as already shown, that Wolff was the agent of the defendant company during its ownership of the premises in suit, and that he obtained for such defendant the two policies which were delivered to the plaintiff's attorneys, and that the premiums thereon were paid by the said defendant. This does not justify the inference that the defendant company assumed the obligation to carry out the terms of the mortgage in regard to taking out insurance for the benefit of the plaintiff. As the defendant company did not assume the payment of the mortgage it was not bound to insure, but in case of failure on its part

to insure in an amount and in a company approved by the plaintiff, she might procure such insurance and charge the defendant company with liability to have added to the mortgage debt an amount sufficient to reimburse the mortgagee for any insurance premium which she might properly incur for her own security. *Sheehan* v. *Spring Valley Wood Products Corp., supra.* In effecting the insurance and paying the premiums thereon and delivering the two policies in question to the plaintiff's attorneys the defendant company complied with the insurance clause contained in the mortgage. Had it not done so the plaintiff could have procured the insurance and added the sums paid for the premiums to the mortgage debt. In the absence of any facts fairly warranting the inference of a duty to insure, it will be presumed that the defendant company complied with the said clause only for the purpose of avoiding such liability. Compliance with such clause did not, under these circumstances, create a personal obligation to insure. The case of *Sheehan* v. *Spring Valley Wood Products Corp., supra,* cannot in my opinion be distinguished in principle from the present one. In that case the mortgage provided, as does the mortgage in this case, that the mortgagor would keep the building on the premises insured against loss by fire for the benefit of the mortgagee. Such a covenant is contained in the statutory short form of mortgages, originally enacted by subdivision 3 of section 4 of chapter 475 of the Laws of 1890, re-enacted in 1896 by the former Real Property Law (Gen. Laws, chap. 46 [Laws of 1896, chap. 547], § 219, subd. 3), and again re-enacted in 1909 by the present Real Property Law (Cons. Laws, chap. 50 [Laws of 1909, chap. 52], § 254, subd. 3). By chapter 682 of the Laws of 1917 these provisions of section 254 were amended and became subdivision 4 of said section 254.

As was said in the *Sheehan* case (p. 121): " These provisions are to be construed with section 257 of the Real Property Law, declaring that 'All covenants contained in any grant or mortgage of real estate bind the heirs, executors, administrators, successors and assigns of the grantor or mortgagor, and inure to the benefit of the heirs, executors, administrators, successors and assigns of the grantee or mortgagee in the same manner and to the same extent, and with like effect as if such heirs, executors, administrators, successors and assigns were so named in such covenants, unless otherwise in said grant or mortgage expressly provided ' (see also Laws of 1890, chap. 475, § 5; Real Property Law of 1896, § 222)." In the case just referred to, as in the present one, none of the grantees had assumed the payment of the plaintiff's mortgage, but took title subject thereto. The defendant Spring Valley Wood Products Corporation had the buildings insured in different insurance companies for $56,650. One policy for $2,500, covering said buildings and contents, provided that the loss, if any, should be payable to the insured plaintiff and another mortgagee, as their interest may appear. The total insured loss on the building was $13,971.78, and the proportionate amount on this $2,500 policy was conceded to be $558.87, of which $300.93 was applicable to the plaintiff's mortgages. Besides this $2,500 policy, all the other insurance had been taken by the said defendant for its own protection, and not for the benefit of the plaintiff or of the other mortgagee, and the terms of the policies covered such interest only. The plaintiff sought to impress a lien in her favor upon the proceeds of the insurance as equitable owner, to the extent of her mortgage debt of $7,000, with $125 interest and costs. The Special Term decreed the lien, because it considered that the mortgage clauses were considered

to import that the mortgagors, their successors and assigns, including the said defendant, should keep the building insured for the benefit of the plaintiff, as mortgagee.  Upon the appeal the judgment was reversed and the complaint dismissed, the Appellate Division holding that a mortgagee is not entitled to a lien upon the proceeds of insurance upon a building destroyed by fire where the insurance was taken out and paid for by the owner of the premises who purchased the same subject to, but who did not assume the obligation of the mortgage, which contained a clause for insurance in favor of the mortgagee.  The court, referring to the above mentioned provisions of the Real Property Law, at pages 121 and 122, said: " These forms authorized in the Real Property Law abridged the covenants in deeds and mortgages.  They read into such insurance covenant the terms ' successors and assigns; ' also ' personal representatives,' which are to be applied both to covenantor and covenantee.  This legislation was not intended to work a change in the substantive law, but to reduce and simplify verbiage.  The courts, therefore, may presume that the Legislature, in its re-enactment of the consolidated statutes, did not intend to change the substance of the law. (See *Fifth Avenue Bldg. Co.* v. *Kernochan,* 221 N. Y. 370, 374.)  The effect of these enactments regarding mortgages is to include as parties in these covenants not only the mortgagor but the representatives thereof, an implication which, besides the maker of the covenant, binds those who may thereafter assume its obligation.  Here none of the grantees assumed the plaintiff's mortgages, but all took title subject thereto.  Such grantees are not bound personally to insure.  The clause, however, charges them with liability to have added to the mortgage debt an amount to reimburse the mortgagee for any insurance

premium which she might properly incur for her security. An examination of the original record in *Dunlop* v. *Avery*, 89 N. Y. 593, tried by a referee, shows a finding by him (p. 23), ' That the said defendant, Chapman W. Avery, in said mortgage, covenanted in his own behalf and in behalf of his legal representatives, to keep the property described in said mortgage insured for $2,000 and that the losses, if any, by fire, should be paid to the said Dunlop (plaintiff), or a sufficient amount thereof to satisfy any balance unpaid on the said mortgage.' Yet that judgment held that such covenant was ' entirely personal in its character, does not affect the land or run with it, and is collateral and incidental to the remaining covenants in the mortgage ' (p. 599). Obviously the same effect must follow a rule of statutory construction which makes this short form equivalent to the longer form there considered. That such affirmative covenants do not run with the land was mentioned in *Miller* v. *Clary* (210 N. Y. 127). The large and increasing volume of mortgage insurance forbids the idea that in a statute to abridge common forms it was intended to overturn and unsettle a rule of covenants accepted in New York since 1882 and reaffirmed in *Reid* v. *McCrum* (91 N. Y. 412) and now widely recognized. (Joyce, Ins. 2d ed. sec. 23, p. 8; 27 Cyc. 1259; *Columbia Ins. Co. of Alexandria* v. *Lawrence,* 10 Pet. 507, 513; *Farmers' Loan, etc., Co.* v. *Penn. Plate Glass Co.,* 186 U. S. 434).'' From the authority of that case it follows that it was not the duty of the defendant company, under the mortgage, to take out insurance for the benefit of the plaintiff, and that the policy for $7,500 issued by the Fidelity-Phenix Fire Insurance Company of New York, in favor of the said defendant, did not inure to the benefit of the plaintiff as the holder of the mortgage in question. The plaintiff's

counsel urge that even though it may not have been the duty of the defendant company, under the mortgage, to take out insurance for the benefit of the plaintiff, yet by reason of its alleged recognition of such duty by actually taking out insurance for the plaintiff's benefit and thereby obtaining for itself pecuniary benefit from a three-year rate in place of an annual rate, which would have been required had the plaintiff been compelled to take out insurance, the plaintiff was entitled to rely upon the assumption of such obligation by the said defendant, and that the defendants are estopped from denying the existence of the said alleged duty under the mortgage, when, as plaintiff claims, to do so will result in serious loss to her. *Rothschild* v. *Title G. & T. Co.,* 204 N. Y. 458; *White* v. *Kenyon,* 33 App. Div. 623; affd., 164 N. Y. 590; 2 Pom. Eq. Juris. (3d ed.) § 965, and *Hathaway* v. *Payne,* 34 N. Y. 92, 109, are cited in support of such contention, but I fail to see the application of such authorities. The mere fact that the defendant company may have had a pecuniary advantage by insuring the property for three years instead of one year did not create any personal obligation on its part to insure for the plaintiff's benefit. If the defendant company was able to obtain such a reduction in the rate it was not, as plaintiff claims, at her expense. The rights of the plaintiff could not be impaired by policies for a longer period than one year if they were sufficient in amount and form and issued by a solvent insurance company. During the existence of the mortgage debt she was entitled at all times to be fully and abundantly protected, and if the policies conformed to these requirements she was fully protected, even though the property was insured for a longer term than one year, and the defendant company thereby obtained the benefit of a lower insurance rate. While it is true that under subdivision

four of section 254 of the Real Property Law the plaintiff, had the defendant company failed to insure the property, would have been permitted to insure it "from year to year" only (*Bieber* v. *Goldberg,* 133 App. Div. 207), such provisions, nevertheless, do not prohibit the owner of the property from tendering to the holder of the mortgage a policy for a longer term. The latter has, of course, a right to approve or disapprove of the amount of the insurance and the company in which it may be carried (Real Prop. Law, § 254, subd. 4. See *Heal* v. *Richmond County Savings Bank,* 127 App. Div. 428), and if the policy tendered is not in these respects satisfactory, or if the form thereof does not fully protect the holder of the mortgage (Real Prop. Law, § 254, subd. 4) and the property owner refuses to furnish a satisfactory policy, the holder of the mortgage may insure the property pursuant to the provisions of the said subdivision at the expense of the property owner. So far as I can gather there was nothing in the conduct of the defendant company in taking out the two policies in question and delivering them to the plaintiff's attorneys which would estop it from denying the existence of its alleged duty under the mortgage to insure the property for the protection of the plaintiff. Neither was there anything in the conduct of the defendant company in furnishing such two policies to the plaintiff's attorneys to lull them into inaction. Moreover, I am unable to discover in the record any evidence from which it may fairly be inferred that the defendant company in so furnishing the plaintiff's attorneys with the two policies did anything to mislead them or to cause the plaintiff to change her position. If, as plaintiff claims, no examination of the two policies which were delivered to her attorneys was ever made, the failure to do so is not, so far as the evidence dis-

closes, due to any fault on the part of the defendant company or Wolff, its agent. Another point urged on behalf of the plaintiff is that, even if it is assumed that the defendant company was under no obligation to take out insurance for the benefit of the plaintiff, nevertheless, when it in fact did so, it at least acted as agent of the plaintiff in so doing, and having so acted, it will not be permitted to make a profit for itself out of the transaction at the expense of the plaintiff, and that equity will treat it as a trustee for the benefit of the plaintiff. There is no question as to the correctness of the rule relied on by the plaintiff, that an agent undertaking any business for another is disabled in equity from dealing in the matter of the agency upon his own account or for his own benefit; and if he does so in his own name he will be considered as holding in trust for his principal. 39 Cyc. 188; *Densmore* v. *Searle,* 7 App. Div. 45, 46; 2 Pom. Eq. Juris. (3d ed.) § 959. Such rule, however, is not applicable to the present case. It appears from the stipulation as to the facts that Wolff, as the agent of the defendant company, obtained for it the two policies in question, which were delivered by the said defendant company to the attorneys for the plaintiff at or about the time of their issuance and that the premiums thereon were paid by such defendant. The record, however, is silent as to the circumstances under which such insurance was obtained and the policies were delivered. There is thus no evidence in the case that the defendant company or Wolff, its agent, was requested by the plaintiff or her attorneys to procure the policies and deliver the same to her or them. For aught that appears the insurance may have been procured and the policies delivered without a previous request from or understanding with the plaintiff or her attorneys. In this connection it

should be borne in mind that although not in duty bound to insure, the defendant company, nevertheless, had the right in order to avoid liability to have added to the mortgage debt any sum which the plaintiff might pay for premiums on insurance for her security to insure the property for her benefit and tender the policies to her or her attorneys, which she or they had a right to disapprove for any sufficient cause. The stipulated facts are therefore wholly insufficient to justify a finding that the defendant company acted as agent for the plaintiff when it took or caused to be taken out insurance for her benefit. In order to justify such a finding it must be apparent from the facts and circumstances that there was an express or implied intention to create the relation of agency. 2 C. J. 437. The plaintiff claims, furthermore, that her right to the relief sought is in no way affected by the retention of the two policies which were delivered to her attorneys because, as claimed, there was no obligation on her or their part to examine them. In support of the point so raised the argument is advanced that the only thing that the plaintiff was required or permitted to do was the affirmative act of approving the amount of the insurance and the company in which the same should be carried and that she was not required to approve the form of the policies. With this argument I cannot agree. Subdivision 4 of section 254 of the Real Property Law, among other things, provides that a covenant to insure " must be construed as meaning that the mortgagor, his heirs, successors and assigns will, during all the time until the money secured by the mortgage shall be fully paid and satisfied, keep the buildings erected on the premises insured against loss or damage by fire, to an amount and in a company to be approved by the mortgagee, and will assign and

deliver the policy or policies of such insurance to the mortgagee, his executors, administrators, successors or assigns, so and in such manner and form that he and they shall at all time or times, until the full payment of said moneys, have and hold the said policy or policies as a collateral and further security for the payment of said money, and in default of so doing, that the mortgagee or his executors, administrators, successors or assigns, may make such insurance from year to year, in the sum not exceeding the principal sum for the purposes aforesaid, and pay the premium or premiums therefor, * * *." As I construe these provisions the words " in default of so doing," which refer to the first portion of such subdivision and to all that precede such words, mean, that the mortgagee has the same remedy in the event that the policies, so far as concerns amounts and companies, are not satisfactory to him as he has for their failure to be in proper form to protect him. I fully agree with the plaintiff's counsel, that the clear purport of the said subdivision 4 of section 254 of the Real Property Law is to protect the mortgagee in every way possible. Under its provisions the plaintiff, in case the policies were insufficient to protect her, and the defendant company refused to obtain further insurance, could have procured new or additional insurance and added the premiums paid therefor to the mortgage debt. The plaintiff, however, did not avail herself of such remedy. It may be true, as contended for by the plaintiff, that she was under no obligation to examine the two policies in question. Had she done so the mistake in the said policy issued by the Phœnix Assurance Company, Lim., of London, in naming the American Mortgage Company as the mortgagee instead of the plaintiff to whom the mortgage had theretofore been assigned, would no doubt have been

discovered. Notwithstanding such mistake the insurance company last above named paid to the plaintiff the sum of $5,818.18 on the policy so issued by it. The plaintiff maintains that since the policy just mentioned had no valid mortgage clause it was only enforcible proportionately with other insurance on the property, including that taken out by the defendant company for $7,500 for its own protection, and that but for such insurance the sum payable to her would have been considerably greater. The plaintiff further urges that no approval of the two policies can be implied from the mere retention thereof, and by holding them without reading their contents she is not barred from objecting to the defendant company obtaining an advantage at her expense. Be this as it may, since the defendant company has not assumed payment of the mortgage it was not bound to insure, and since it had not assumed or recognized any duty under the mortgage to insure and was not the agent of the plaintiff when the policies in question were procured and delivered to her attorneys, the plaintiff would seem to be without remedy against the defendants or either of them. The plaintiff may have been under no obligation to examine the policies, yet if she did not avail herself of the remedy afforded by the statute to protect herself, she cannot complain if she suffered any loss. The briefs of counsel for the respective parties discuss the question whether or not the plaintiff collected all the moneys which were collectible under the two policies in question. As I am clearly of the opinion, from a consideration of the whole case, that plaintiff has not established any cause of action against either the defendant company or the defendant executors, it will not be necessary for me to pass upon this question. My conclusion is that there should be judgment in favor of all the

defendants upon the merits. The question of costs will be determined when the requests for findings of the respective parties are submitted. All papers received by me, including copy of pleadings, the stipulation as to the facts, briefs and filed papers, have been returned to the clerk, to whom all further papers should be handed in, with proof of service.

Judgment for defendants.